**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Richard C.,  *Plaintiff*,  V.  Frank J. Bisignano, Commissioner of Social Security,  *Defendant*. | Case No. 3:23-cv-50170  Honorable Michael F. Iasparro |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard C. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying his continued entitlement to disability insurance benefits on reconsideration.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

As of September 4, 2003, the Commissioner found Plaintiff disabled due to fracture of the lower limb and diabetes. R. 102. As a part of its ongoing evaluation of disability benefits, the Commissioner completed a comparison point decision ("CPD") on March 9, 2016, and found that Plaintiff's disability was continuing as there had been no medical improvement of his impairments. R. 92, 98. The Commissioner evaluated Plaintiff's impairments again in November 2019 and determined that Plaintiff was no longer disabled. R. 88.

Following a hearing, an administrative law judge ("ALJ") issued a decision in October 2022, confirming that Plaintiff was no longer disabled. R. 15-27. The ALJ found that Plaintiff had seen medical improvement since the CPD but Plaintiff still had the following severe impairments: status post kidney transplant and pancreatic transplant (not on dialysis); chronic kidney disease stage 3; bilateral proliferative diabetic retinopathy; right detached retina; bilateral cataracts; peripheral neuropathy; post traumatic arthritis of the right ankle post fracture in January 2016; hernia status post repair; and obesity. R. 20-21. The ALJ determined that these impairments did not meet or medically equal a listed impairment. R. 17-20. The ALJ concluded that Plaintiff, as of November 18, 2019, had the residual functional capacity ("RFC") to perform light work with the following limitations:

> Occasionally climb ramps, stairs, ladders, ropes and scaffolds; occasionally stoop, kneel, crouch and crawl; frequently balance; perform tasks that require occasional

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 7.

1

but not frequent reading; not able to perform tasks that require fine visual perception and not working with objects that require fine precision; never be around unprotected heights and dangerous heavy moving machinery; and not able to operate commercial vehicles.

R. 21. The ALJ determined that Plaintiff had no past relevant work, but that there were other jobs that existed in significant numbers in the national economy that he could perform. R. 25.

The Appeals Council denied Plaintiff's request for review on January 31, 2023, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 CFR § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision for a lack of substantial evidence. Specifically, Plaintiff argues that the ALJ's opinion is unsupported for three main reasons: (1) the ALJ improperly found there to be medical improvement of Plaintiff's impairments; (2) the ALJ failed to discuss the combined impacts of several of Plaintiff's impairments; and (3) the ALJ should have sought medical expert testimony to supplement the outdated opinions of the state agency consultants. Dkt. 16. As explained below, the Court does not find that any of these arguments warrant a remand.

Initially, the Court notes that Plaintiff's arguments are generally vague and undeveloped. It is not the role of this Court "to research and construct the parties' arguments." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (citation omitted); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived.") (citation modified). Instead of fully developing any single argument, Plaintiff seems to follow the unhelpful strategy

2

of throwing things at the wall and seeing what sticks. Plaintiff also abandons most of his arguments by failing to reply to the Commissioner's responses. *Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."). Nonetheless, the Court will address each of the issues raised by Plaintiff.

### I. Medical Improvement

Once a claimant is found to be entitled to disability benefits, the Commissioner will periodically review the claimant's continued entitlement to such benefits. 20 C.F.R. § 404.1594(a). In these reviews, the Commissioner must decide if the claimant's disability continues by "determin[ing] if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." *Id.* Medical improvement is found if there "is any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the" CPD. *Id.* § 404.1594(b)(1).

Here, Plaintiff's CPD was completed on March 9, 2016, when the Commissioner determined Plaintiff was still disabled because his impairments – a lower limb fracture and diabetes – had not medically improved. R. 78-79. In her review of the records, the ALJ found that this was no longer true as there was "a decrease in medical severity of the impairments present at the time of the CPD." R. 20. Plaintiff challenges this finding as "his orthopedic problems seemed to multiply." Dkt. 16, at *6. However, as explained above, medical improvement is shown by a decrease in the medical severity of the impairments that existed at the time of the CPD, not by a decrease in the number of impairments. Thus, medical improvement would be found in this case if Plaintiff's lower limb fracture or diabetes decreased in severity.

Notably, Plaintiff points to only two pieces of evidence from after the March 2016 CPD – a note from 2019 documenting Plaintiff's gait problem and the records from Plaintiff's left fibula fracture. Dkt. 16, at *6 (citing R. 729, 875). As discussed more fully below, the ALJ properly addressed this line of evidence and simply found other evidence showing improvement more compelling. R. 20. It is not the Court's role to second-guess this finding. *See, e.g., Padua v. Bisignano*, No. 24-1718, 2025 WL 2177540 (7th Cir. Aug. 1, 2025). Even if there had been error in the ALJ's determination that Plaintiff's lower limb fracture had improved, Plaintiff points to no error in the ALJ's determination that his diabetes had also improved. The ALJ explained the improvement of Plaintiff's diabetes by noting Plaintiff's glucose levels were "within normal range," and, most notably, Plaintiff's own testimony confirming that he no longer has diabetes. R. 20. The complete non-existence of an impairment found at the CPD is certainly enough to show *any* decrease in the medical severity of that impairment.

Plaintiff is, however, correct that the analysis does not stop here. Once the ALJ found there to be medical improvement, she was also tasked with determining whether Plaintiff's impairments, as they presently limit him, prevent Plaintiff from performing past relevant work or adjusting to other work. 20 C.F.R. § 404.1594(f)(6)-(9). As discussed more fully below, the ALJ did exactly that and provided substantial evidence to support her determination that Plaintiff is, based on his current RFC, able to perform a significant number of jobs in the national economy.

## II. Combined Impairments

Plaintiff also argues that the ALJ did not consider the combined impact of his impairments and points to specific limitations that Plaintiff believes the ALJ did not properly consider. These arguments largely point to purely hypothetical limitations that could result from Plaintiff's impairments with no indication or assertion that they actually do. This speculative language is simply not enough to show that the ALJ's RFC determination inadequately accounts for Plaintiff's work-related limitations. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (explaining that a claimant's showing of the existence of an impairment does not equate with a showing that the claimant suffers from common symptoms of that impairment without further evidence); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities."). Notably, Plaintiff also fails to identify any medical source that opined to limitations greater than those adopted by the ALJ. This is critical because the Seventh Circuit has stated that "when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 Fed. App'x 838, 843 (7th Cir. 2019) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding there to be "a fundamental problem" in the plaintiff failing to provide a medical opinion setting limits greater than those set by the ALJ).

### a. Leg elevation

Plaintiff first alleges that "[t]he ALJ did not assess any limitations for leg elevation." Dkt. 16, at *7. True enough. What Plaintiff fails to point to though is any assertion Plaintiff, or his medical providers, has made that he requires such a limitation. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("[A]n ALJ need only include limitations that are supported by the medical record.").

In making this argument, Plaintiff relies on three cases that were remanded due to, at least in part, the ALJ's failure to explain their exclusion of a leg elevation requirement. The crucial difference between this case and those cited is that the claimant in each of those cases asserted that they needed to elevate their leg and provided evidence to support this contention. *Smith v. Astrue*, 467 Fed. App'x 507, 510-11 (7th Cir. 2012) (unpublished) ("[T]here was evidence in the record that Smith had to elevate her leg, including her hearing testimony; the reports she and her husband filled out for the agency shortly after she filed her application; records from her hospital stay, which included instructions to keep the leg elevated after discharge. . ."); *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *4 (N.D. Ill. Oct. 19, 2020) ("Charles's need for a leg-elevation requirement is well-supported by the record" both in his testimony and by doctor recommendations); *Bunton v. Saul*, No. 19-cv-50157, 2021 WL 2036534, at *4 (N.D. Ill. May 21, 2021) (The record includes "Plaintiff's leg elevation testimony as well as the recommendations from her doctors that she elevate her leg at various points during her treatment.").

Here, Plaintiff did not testify to any need to elevate his leg nor does Plaintiff direct the Court to any evidence supporting this alleged limitation. *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the evidence.). "Because [Plaintiff] did not testify about any restrictions in his capabilities related to [reaching and handling], and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

4

### b. Reaching and handling

Plaintiff then asserts that the ALJ erred by failing to assess any limitations on reaching and handling despite Plaintiff's verified problems with his right shoulder. Dkt. 16, at *8. Plaintiff is correct that objective evidence in the record supports a right shoulder impairment. As such, the ALJ found Plaintiff to have an impairment of "right shoulder SLAP lesion and rotator cuff tendinosis without tear." R. 17. However, as discussed above, the existence of an impairment does not, by itself, support the existence of a limitation caused by that impairment. Imaging does not show, nor does Plaintiff allege, the need for any limitation on reaching and handling. In fact, Plaintiff and his mother described the impact of Plaintiff's conditions but did not select "reaching" or "using hands" as affected abilities when presented with those options in their function reports. R. 345, 355. Again, Plaintiff "has not alleged [a reaching and handling] limitation and the record lacks information indicating one exists" so the ALJ's failure to discuss such a limitation was not in error. *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)).

### c. Standing and walking

Plaintiff also faults the ALJ for limiting Plaintiff only to light work despite having conditions that "could conceivably impact[] his ability to stand and walk." Dkt. 16, at *8. However, ALJs are not tasked with deciding what conceivable limitations a theoretical person with claimant's impairments *could* have but rather must determine "the most physical and mental work *the claimant* can do." *Swiecichowski v. Dudek*, 133 F.4th 751, 755 (7th Cir. 2025) (emphasis added) (internal quotation marks omitted).

In support of this "conceivable" limitation, Plaintiff points to evidence of his left fibula fracture[2], neuropathy, and history of right ankle fracture. Dkt. 16, at *8. Specifically, Plaintiff argues his fibula fracture occurred after the state agency consultants reviewed his records and thus was not accounted for in their opinion. *Id.* As discussed more fully below, new evidence does not necessarily make a medical opinion unreliable, nor does it create the need for a new expert opinion. Additionally, Plaintiff himself explained that his fibula fracture was healed. R. 44. Plaintiff does not point to any evidence that suggests otherwise or shows any continuing limitations either. Again, the ALJ is not required to impose restrictions for impairments that Plaintiff has not shown to affect his capacity to work. *See Weaver v. Berryhill*, 746 Fed. App'x 574, 579 (7th Cir. 2018) (unpublished) ("It was Weaver's burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.").

---

[2] Plaintiff actually describes a left tibia fracture in 2021 as well as a "history of left tibial fracture." However, the medical records cited show a fibula fracture and Plaintiff does not cite to, nor was the Court able to find in its review of the record, evidence of any tibia fracture (historically or in 2021). R. 875. Plaintiff also testified at the hearing about his broken tibia but then explains that he was referencing "the small bone that goes [] along the side" of his leg. R. 44. The fibula is "the outer, smaller bone of the leg." *Fibula*, Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/765301/0/fibula?q=fibula [https://perma.cc/6D4U-LN3H] (last visited July 30, 2025). Thus, the Court will interpret these statements as a reference to Plaintiff's (single) left fibula fracture on July 30, 2021.

5

As for the neuropathy and right ankle fractures, Plaintiff argues that the ALJ cherry-picked the evidence because she "failed to confront Plaintiff's history of antalgic gait." [3] Dkt. 16, at *8. In support, Plaintiff cites one note referencing his gait problem and one describing his right limp. Dkt. 16, at *3 (citing R. 711, 729). These two single notes do not establish that the ALJ cherry-picked evidence.

It is true that "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings." *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). However, "an ALJ need not mention every piece of evidence, so long [s]he builds a logical bridge from the evidence to [her] conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Although the ALJ did not cite one of the records Plaintiff mentions, the ALJ did note Plaintiff's limp, reduced ankle range of motion, peripheral neuropathy, and reduced sensation in his lower extremities. R. 20-24. Thus, the ALJ demonstrated an understanding of Plaintiff's gait issues and did not ignore an entire line of evidence. Although Plaintiff may not agree with the significance the ALJ assigned to these records, he "cannot prevail by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

### d. Absenteeism and off task behavior

Plaintiff also argues that the ALJ erred not including any limitations for absenteeism or off task behavior in the RFC determination. Dkt. 16, at *8. Plaintiff suggests that his hospitalizations in 2021 and his complications that "briefly came close" to meeting one of the criteria of a listing show that such a limitation was needed. *Id.* at *9.

The ALJ recognized the impact of Plaintiff's hospitalizations but simply found that they did not establish an impairment of continued absenteeism as Plaintiff's symptoms improved and, once his medication was adjusted, his condition became stable again. R. 23.; *see also Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (explaining that the ALJ did not need to address absenteeism when no doctor commented on claimant's ability to work regularly, even with a history of inpatient treatment). The ALJ also took note of Plaintiff's primary care physician's recommendation that Plaintiff "remain temporarily off work" in response to the COVID-19 pandemic. R. 24. However, the ALJ properly found that this did not show "any permanent work-related limitations" that needed to be accounted for in the RFC. *Id.*; *see also Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) (explaining that the ALJ did not err by failing to evaluate a doctor's recommendation that was only "a temporary measure").

---

[3] Plaintiff also alleges that the ALJ "inordinately focused on Plaintiff's lack of use of an assistive device" but does not develop this argument any further than this conclusory statement. As such, this argument is waived. *See Franco v. Richland Refrigerated Solutions, LLC*, 128 F.4th 857, 864 (7th Cir. 2025) (The Court is "under no obligation to address" undeveloped arguments.). Nonetheless, the Court notes that much of the ALJ's discussion of Plaintiff's lack of assistive device can be found in her analysis of the listed impairments. R. 18. Two of the listings considered by the ALJ have an element that can be met by showing a documented need for an assistive device. *See* 20 C.F.R. § 404, Subpt. P, App. 1. The Court can hardly fault the ALJ for analyzing an element of the listing which she is evaluating.

As for Plaintiff's alleged need for a limitation for off task behavior, the ALJ notes that the "record reflects no significant problem with the claimant's ability to focus attention or stay on task at a sustained rate." R. 19. Plaintiff does not point to, nor can the Court find, a single piece of evidence that contradicts this. Thus, the ALJ's failure to include such a limitation was not in error.

Ultimately, Plaintiff's arguments about the combined impact of his impairments largely boil down to an invitation to reweigh the evidence which this Court cannot, and will not, do. "In short, this is not a case where the ALJ presented a skewed version of the evidence or failed to minimally discuss contrary evidence, so reversal is not warranted on this ground." *Thorlton*, 127 F.4th at 1082 (citation modified).

### III. Medical Expert

Finally, Plaintiff argues that the ALJ should have sought testimony from a medical expert as the state agency consultants completed their evaluations without having access to the more recent evidence of Plaintiff's "near kidney failure in 2021." Dkt. 16, at *9. Plaintiff suggests that the state agency consultants' analysis was incomplete as this further evidence "*could* be consistent with listing equivalence." *Id.* at *9-10.

Plaintiff was admitted to the hospital twice in April 2021 with the chief complaint of nausea, and again in July 2021 after a fall that resulted in a left fibula fracture. R. 962-63, 1742, 870. After Plaintiff's two hospitalizations for nausea in April 2021, his "acute kidney injury resolved" after his medications were adjusted and he was given fluids. R. 1529. Plaintiff was also discharged in "good" condition after his July 2021 hospitalization. R. 899. The ALJ noted Plaintiff's stable condition after his April 2021 hospitalizations and explained her consideration of Plaintiff's healed fibula fracture. R. 22-23.

Plaintiff asserts that the ALJ "succumb[ed] to the temptation to play doctor" by failing to seek the opinion of another medical expert to interpret these hospitalization records. Dkt. 16, at *9-10. "It is well-established that ALJs may not rely on a state agency consultant's assessment if later evidence 'reasonably could have changed' the opinion." *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). However, "older assessments can still constitute 'substantial evidence' supporting the ALJ's decision where the new [evidence] do[es] not necessarily undermine previous medical conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (internal quotation marks and citation omitted). Thus, "the critical question is whether the new evidence contains 'significant and new developments' that 'reasonably' could have changed the previous reviewing consultant's assessment." *Baptist*, 74 F.4th at 443.

The notes from these hospitalizations are certainly not silent on Plaintiff's kidney issues, but the state agency consultants already knew that Plaintiff had kidney issues, "so the later records corroborating this condition do not necessarily undermine [their] conclusions." *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021). Plaintiff has not pointed to "*any* new symptoms, limitations, or treatment recommendations" in these hospitalization records, let alone any that "changed the picture so much that the ALJ was required to seek an updated opinion to account for it." *Baptist*, 74 F.4th at 443 (emphasis added).

Moreover, this case does not present an instance of the ALJ replacing an expert's opinion with her own lay opinion. *See, e.g., Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Nor is this an example of an ALJ interpreting new evidence to support determinations she was not qualified to make. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Rather, the ALJ relied on Plaintiff's own reports of his healed fracture and the medical records noting his stable condition and improved kidney function after his April 2021 hospitalizations. These records were "conveyed in layman's terms by [Dr. Tantoco], rather than the 'medical mumbo jumbo' [the Seventh Circuit has] warned judges not to interpret." *Baptist*, 74 at 442 (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); R. 1529. Thus, the ALJ did not impermissibly play doctor by choosing, despite these hospitalizations, not "to seek an updated opinion on an impairment that had not worsened since the consultants' review." *Baptist*, 74 F.4th at 442-43.

Plaintiff further argues that the listing analysis was flawed.[4] Dkt. 16, at *9-10. Initially, the Court notes that Plaintiff does not cite a specific listing in making this argument. He generally cites the introduction of the genitourinary disorder section, but a listing is only met when "all of the criteria of that listing, *including any relevant criteria in the introduction*" are satisfied. 20 C.F.R. § 404.1525(c)(3) (emphasis added). Thus, satisfying the criteria in the introduction alone does not show that a listing is met. Earlier in his briefing, Plaintiff does reference Listing 6.05 but only to note that "he briefly came close" to satisfying one of the criteria of that listing. Dkt. 16, at *9. However, this is simply not enough to show "by a preponderance of the evidence" that a listing is met.[5] *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023); *see also McHenry*, 911 F.3d at 872 ("McHenry bore the burden to show that her back pain met or medically equaled *all* the criteria under Listing 1.04A. . . An impairment that manifests only some of the required criteria, no matter how severely, does not qualify." (citation modified)); *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("It is worth reiterating that a claimant bears the burden of proof at step three.").

Ultimately, Plaintiff's argument fails to put forth a sufficient reason to question "the reasoned judgment of the [ALJ] on how much evidence to gather." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Thus, remand to allow the ALJ to seek another medical expert opinion is not warranted.

---

[4] Plaintiff alleges that the state agency consultants' listing analysis was flawed with no mention of the ALJ's analysis. However, the ALJ is "responsible for making the determination or decision" of disability so any impact this new evidence may have on the state agency consultants' listing analysis would be "neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). Thus, to succeed with his argument that the listing analysis was flawed, Plaintiff would need to convince the Court that this new evidence would impact *the ALJ's* analysis. He has not.

[5] The Court notes that Plaintiff's alleged close call with the criteria of Listing 6.05 is, even with the qualifying language used by Plaintiff, inaccurate. As Plaintiff asserts, Listing 6.05 does require a serum creatinine level of 4 mg/dL or greater but this must be shown "on at least two occasions at least 90 days apart." 20 C.F.R. § 404, Subpt. P, App. 1. Thus, coming "close" to this level one time, which is all Plaintiff alleges, does nothing more than show that Plaintiff *almost* met half of one criterion of a listing that has two criteria.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: August 21, 2025          By: _____
                                      Michael F. Iasparro
                                      United States Magistrate Judge